UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMY BRICKEY, et al.,

                                        Plaintiffs,

                                                                     <u>ORDER</u>

                                                                    06-CV-6084L

                              v.

DOLGENCORP., INC., et al.,

                                        Defendants.
_____

       Plaintiffs Tammy Brickey, Becky Norman, Rose Rochow, Sandra Cogswell, Melinda Sappington, and Jennifer Anderson ("plaintiffs") bring this action against defendant Dolgencorp, Inc., ("defendant" or "Dolgencorp") pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b) ("FLSA"), New York Labor Law §§190 et seq., 652, Ohio Rev. Code Ann. §§4111.01 et seq., 4113.15, Maryland Wage and Hour Laws, Md. Code Ann., Labor & Empl. §§3-401 et seq., 3-501 et seq., and North Carolina Wage and Hour Act, N.C. Gen. Stat. §95-25.1 et seq., for defendant's alleged failure to pay overtime pay to plaintiffs and other Dolgencorp employees who are similarly situated. Plaintiffs claim that during their employment with various Dollar General Stores, Dolgencorp maintained a practice of allocating payroll hours to each store, which resulted in managers' "shaving" off time from time records, and/or requiring employees to perform tasks "off-the-clock."

       Pending before the Court are motions by plaintiffs for the conditional certification of an FLSA collective action (Dkt. #104), as well as certification of state law claims classes pursuant to

Fed. R. Civ. Proc. 23 (Dkt. #128). Dolgencorp has moved to dismiss the claims of some of the plaintiffs, who failed to appear for depositions (Dkt. #146), strike portions of the evidence submitted by plaintiffs in support of the motion for certification (Dkt. #147), and file a surreply in further opposition to plaintiffs' motion to strike certain declarations (Dkt. #179). Plaintiffs have further moved to file certain exhibits under seal (Dkt. #122), file supplemental declarations in support of the motion to collective action certification (Dkt. #127), and strike declarations filed by Dolgencorp (Dkt. #162). For the reasons that follow, plaintiffs' motions for FLSA collective action certification and certification of state law claims classes under Fed. R. Civ. Proc. 23 are both denied. Dolgencorp's motion to dismiss the claims of plaintiffs who did not appear for depositions (Dkt. #146) is denied, and the remainder of the parties' motions (Dkt. #122, #127, #147, #162, and #179) are denied as moot.

## FACTS

Plaintiffs claim that Dolgencorp maintains a practice of allocating payroll hours to each of its more than 8,000 stores nationwide, limiting the number of hours per week that each store is permitted to have its employees work and record. Plaintiffs allege that each store is required or encouraged to stay within its payroll hours allocation, without employees working overtime, and that if a store manager exceeds her allocated payroll hours or permits her employees to work overtime, she could be subject to reprimand or termination by Dolgencorp. Conversely, managers are purportedly rewarded with increased bonuses where the number of payroll hours worked and recorded by their employees is "under budget." Plaintiffs also allege that managers engage in the practice of "carrying over" overtime hours, recording them as regular work hours for a subsequent week in order to avoid paying compensation at the overtime rate during the week in which they were actually worked, as well as in "shaving off" overtime hours (falsely reducing or omitting them) from employees' time records. Plaintiffs also state that Dolgencorp recently implemented a nationwide

scheduling program, which has resulted in employees performing certain tasks "off the clock," and/or working through lunch periods.

**DISCUSSION**

**I.       Plaintiffs' Motion for Conditional Certification of an FLSA Collective Action**

Plaintiffs seek conditional certification of an FLSA collective action, to include:

All employees who held the job title of 3rd keys, lead store clerks, and assistant store managers while employed by Dolgencorp, Inc., and Dollar General Corporation from February 9, 2003 to [the date the Court grants a motion for notice to class members].

Section 216(b) of Title 29 provides that:

an action to recover [unpaid wages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. §216(b).

The Second Circuit has recognized a district court's authority to order that notice be given to potential members of a plaintiff class in actions under this section (generally referred to as "collective actions"), pursuant to the opt-in provisions of the FLSA. *See e.g.*, *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d 335 (2d Cir. 1978), *cert. den.*, 441 U.S. 944 (1979).

Courts utilize a two-step process when analyzing motions to certify a collective action under the FLSA. First, the court determines whether the proposed class members are "similarly situated." *See Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1213-1213 (5th Cir. 1995). If so, the court conditionally certifies the class and orders putative notice to class members, who are then afforded the opportunity to "opt in." Because a collective action requires written consent from the opt-in plaintiffs, "it lies within the discretion of a district court to begin its involvement early, at the point

of the initial notice," in order to ensure that the drafting and distribution of the notice is "timely, accurate and informative." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 171-172 (1989).

At this early stage,[1] the evidentiary standard is lenient, and "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan . . ." *Scholtisek v. The Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005), *quoting Mooney*, 54 F.3d 1207 at 1213. In so doing, plaintiff must make a "modest factual showing sufficient to demonstrate that [they] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Scholtisek*, 229 F.R.D. 381 at 387, *quoting Hofmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Plaintiffs allege that defendant has a policy and practice of violating the FLSA by maintaining an internal payroll hours allocation policy which gives each store a certain number of work hours, or "labor budget," in which typical functions are expected to be performed, and rewarding managers who are able to stay within their recommended allocation. Plaintiffs contend that although the policy is benign on its face, it has the direct and foreseeable effect of motivating managers to falsely reduce reported work hours for their employees, and/or to assign employees tasks to be performed "off the clock," which results in undercompensation of employees for overtime. Plaintiffs contend that Dolgencorp maintains over 8,000 store locations, all of which are subject to the same policies and procedures and similarly affected by them.

---

[1] The second phase of the FLSA collective action inquiry typically occurs after discovery is complete, often on a motion for decertification of the class by the defendant. *Scholtisek*, 2005 U.S. Dist. LEXIS 14957 at *12-*13. At that point, the court makes a factual finding, based on the record as developed through discovery, concerning whether the plaintiff class is "similarly situated." *Id*. If so, the action may proceed to trial. If not, the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims. *Id.*

In contrast, Dolgencorp characterizes the plaintiffs' claims as "dissimilar, independent and anecdotal" allegations of time-shaving and working off-the-clock, and argue that plaintiffs have failed to demonstrate a factual nexus between Dollar General's payroll hours allocation policy, and the actions that individual, rogue managers might have taken – wholly on their own – in response to the policy. Indeed, plaintiffs do not allege that it was impossible or even difficult for managers to comply with the policy without engaging in illegal activities. A number of the affidavits submitted in support of plaintiffs' motions for certification are by named plaintiffs and putative class members who eventually became managers, all of whom contend that they fulfilled their managerial duties without resorting to FLSA violations. Dolgencorp also offers individual store data which demonstrates that there is no correlation between stores' hours budgets, and the amount of hours and/or overtime worked, undermining plaintiffs' theory that managers artificially suppressed time records to come in under budget. It is undisputed that the illegal conduct described by plaintiffs was in violation of Dollar General's employee handbook.

Dolgencorp's objections and evidence go to the heart of the merits of plaintiffs' motion for certification. I find that despite an unusually significant amount of pre-certification discovery – the parties' discovery plan (Dkt. #30) provided for facts and merits discovery phases spanning at least one year – plaintiffs have nonetheless failed to make the requisite "modest showing" that they "were victims of a common policy or plan *that violated the law*." *Ayers v. SGS Control Servs., Inc.*, 2004 U.S. Dist. LEXIS 25646 at *4 (S.D.N.Y. 2004) (emphasis added). *See also Scholtisek*, 2005 U.S. Dist. LEXIS 14957 at *22.

Plaintiffs appear to concede that Dolgencorp's hours allocation policy does not, on its face, violate the law. Furthermore, there is no evidence that Dolgencorp's hours allocation budgets were insufficient, such that managers were "forced" to violate the FLSA in order to stay within budget. To the extent plaintiffs originally alleged that managers who failed to stay within their hours

allocation budget – that is, those managers who assigned and recorded overtime for their employees – were penalized, they have offered no admissible evidence in support of that contention. As such, the basis for plaintiffs's claims is presumably that Dolgencorp knew or should have known that if it created incentives for managers to stay within their "budget" for work hours, some managers might take it upon themselves to mischaracterize, under-report, or falsify the time records of their employees in order to lay claim to those incentives. It is not so much Dolgencorp's hours allocation policy about which plaintiffs complain, but the potential and indirect results of that policy. Plaintiffs make similar – albeit even more anecdotal and factually dissimilar – claims concerning Dolgencorp's scheduling program and its procedures for clocking in.

The Court declines to hold that facially-lawful policies, which encourage store management to make productive use of employees' time or to report for work when scheduled, can form the equivalent of a "common policy or plan that violate[s] the law," merely because they *indirectly* might encourage the minimization of overtime. *See Eng-Hatcher v. Sprint Nextel Corp.*, 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. 2009) (denying certification of proposed collective and class actions where plaintiff alleged that legal reward policies to maximize sales and minimize overtime "incentivized" managers to act illegally). Whenever an employer creates a reward system which depends upon the attainment of a particular goal, the potential is created for dishonest persons to act unlawfully in attempting to exploit the policy for their own gain. This does not, however, render the underlying policy illegal, in the absence of some evidence that the employer intended, compelled or condoned unlawful consequences that were a direct result of the policy. Here, Dolgencorp exercised what authority it had to mitigate the possibility that managers would violate the FLSA, by issuing reasonable work hour allocations, and promulgating explicit employee guidelines, about which managers are formally trained, which prohibit violations of the FLSA, including "time shaving" and/or assigning off-the-clock work to hourly employees.

Although plaintiffs have offered some evidence that certain Dolgencorp managers flouted Dolgencorp's policies, plaintiffs have not shown that such activity was widespread or common practice, or that the managers did so because they were instructed, compelled, forced, or encouraged to do so by other Dolgencorp policies. For this reason, I find the matter of *Clark v. Dollar General Corp.*, upon which plaintiffs rely, to be materially distinguishable. 2001 U.S. Dist. LEXIS 25976 (Middle Dist. Tenn. 2001). In *Clark,* a district court granted certification of a regionally-limited FLSA collective action against Dollar General Corporation, brought by assistant managers who claimed, *inter alia*, that Dollar General's policies *forced* them to work off the clock and to violate the FLSA, because they simply could not "carry out their responsibilities" otherwise. *Id.*, 2001 U.S. Dist. LEXIS 25976 at *3. *See also Clark v. Dollar General Corp.*, 2001 U.S. Dist. LEXIS 25975 at *2 (Middle Dist. Tenn. 2001) (plaintiffs "contend that [Dollar General] adhered to and continues to adhere to certain policies and practices throughout its entire company which have encouraged, caused, and/or necessitated the violations of the FLSA"). Here, plaintiffs offer no evidence that the Dolgencorp policies about which they complain compelled, caused or necessitated FLSA violations, and their evidence includes testimony to the contrary, by managers who claim that they ran their stores in line with Dolgencorp's policies at issue, including the hours allocation policy, and without violating the FLSA.

Because plaintiffs have failed, even after an substantial pre-certification discovery, to make a modest factual showing that they were subject to a common policy or practice that violated the law, as opposed to unlawful actions by individual, anomalous managers, their motion for certification of an FLSA collective action is denied.

**II.     Plaintiffs' Motion for Fed. R. Civ. Proc. 23 Certification of State Class Actions**

Plaintiffs also move for class certification of four different subclasses, representing claims arising under the laws of four different states: New York, Ohio, North Carolina, and Maryland,

pursuant to Fed. R. Civ. Proc. 23(b)(3).  The four subclasses are variously defined as: "all persons employed by Dollar General as assistant store managers or 3rd keys within [the state] on or after [a date two, three or six years prior to the filing of the original or amended complaint, depending on the relevant statute of limitations and the pleading in which the state law claims were initially made]."  For each subclass, the plaintiffs' claims include failure to pay for all hours worked, failure to pay minimum wage, and failure to pay overtime premium.

Plaintiffs bear the burden of establishing the four prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) fair and adequate representation of the class. A plaintiff must also qualify to pursue the class action under one of the subdivisions of Rule 23(b).  *See In re Initial Public Offering Sec. Litig.*, 471 F.3d 24, 51 (2d Cir. 2006); *Marisol A. v. Giuliani*, 126 F.3d 372, 375-76 (2d Cir. 1997).  In considering a class certification motion, the Court must accept the allegations in the complaint as true. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001)(internal quotation marks omitted).  Although a court may consider material outside the pleadings to determine whether to class certification is proper, it "*must not consider or resolve the merits of the claims* of the purported class." *Id.* (emphasis added).  "The Second Circuit has emphasized that Rule 23 should be 'given liberal rather than restrictive construction,' . . . and 'it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.'" *Gortat v. Capala Bros.*,  257 F.R.D. 353 at 361-62 (E.D.N.Y. 2009). Nonetheless, the standard for granting certification under Rule 23 is more stringent than that for conditional certification of an FLSA collective action: in order to obtain class certification, plaintiffs must satisfy the four prerequisites of Rule 23(a) and one of the prerequisites of Rule 23(b).  The Court must undertake a "rigorous analysis" to determine whether the plaintiffs have proven each prerequisite by a "preponderance of the evidence."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,

161 (1982); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Capital, Inc.*, 546 F.3d 196, 203 (2d Cir. 2008).

Plaintiffs argue that their experiences are typical of the putative class, that common legal and factual issues predominate over the individual issues presented, and that a class action is superior to fractured, separate lawsuits. According to plaintiffs, litigation of their claims by means of the proposed class action and state subclasses will permit the resolution of hundreds of individual claims simultaneously, in a single forum.

I disagree. Although plaintiffs allege that uniform, nationwide Dolgencorp policies are the basis for their claims, the plaintiffs' claims essentially concern the indirect *effect* of certain policies – as they were enforced or abused to varying degrees by certain managers in certain stores and in certain ways. Because the plaintiffs' claims arose in different stores, under different managers, who reacted to Dolgencorp's hours allocation policy and other policies cited by plaintiffs, to varying degrees and in different ways, the claims are too highly individualized to form the basis for a proper class action.

On balance, I find that plaintiffs simply have not demonstrated by a preponderance of the evidence that certification of the proposed state subclasses is appropriate – specifically, I find that common legal and/or factual issues do not predominate over individualized claims, and that the interests of judicial economy would not be served by the hundreds of fact-intensive "mini-trials" that a class action of this nature would require. Accordingly, the plaintiffs' motion for certification of four state law subclasses is denied.

This action will therefore proceed solely on behalf of the named plaintiffs.

**III.     Dolgencorp's Motion for Dismissal of Brickey's Claims Due to Non-Appearance at Deposition**

Defendant moves to dismiss the claims of named plaintiff Tammy Brickey, who was noticed for one or more depositions but failed to appear, and cannot be located by plaintiffs' counsel.[2]

Dismissal of a party's claims under Fed. R. Civ. Proc. 37 is a drastic remedy, warranted "where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1173, 1176 (2d Cir. 1998). Dolgencorp contends that by Brickey's failure to appear or to be available for deposition, Dolgencorp was prejudiced in its ability to argue and prove that she lacks the requisite similarity to the putative class members, and/or is a fit representative.

Courts generally will not, however, dismiss a plaintiff's claims in the absence of a prior judicial warning that non-compliance with discovery may result in such a sanction. As such, the Court denies Dolgencorp's motion to dismiss Brickey's claims on account of her failure to comply with discovery, without prejudice. Brickey, however, may now consider herself warned. I remind plaintiff of her continuing obligation to comply with discovery in this case, and order her to comply with Dolgencorp's requests for deposition. If she fails to do so, her claims will be subject to dismissal pursuant to Fed. R. Civ. Proc. 37.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to certify this action as an FLSA collective action (Dkt. #104), to certify additional subclasses for state claims originating out of New York, Ohio, Maryland and North Carolina (Dkt. #128), as well as plaintiffs' request for expedited notice

---

[2] Defendants also moved to dismiss the claims of opt-in plaintiffs Monica Earll, Jamie Miles, Laurie Sandner and John Schutt, and the same grounds. Because the plaintiff's motions for class and/or collective action certification are hereby denied, the defendants' motion to dismiss non-deposed plaintiffs is moot to the extent that it concerns opt-in plaintiffs.

to class members, are denied. The matter will proceed solely on the part of the six named plaintiffs, Tammy Brickey, Becky Norman, Rose Rochow, Sandra Cogswell, Melinda Sappington, and Jennifer Anderson.

Dolgencorp's motion to dismiss the claims of plaintiffs who did not appear for depositions (Dkt. #146) is denied without prejudice, and plaintiff Brickey is hereby reminded of her obligation to comply with discovery in this case, ordered to appear for properly-noticed depositions in the future, and warned that her failure to do so may result in the dismissal of her claims. The remainder of the parties' motions to strike, and for leave to file supplemental submissions (Dkt. #122, #127, #147, #162, and #179) are denied as moot.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
February 23, 2011.